IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gregory J. Korba, | ) |
| Petitioner, | ) CIV 12-00857 PHX SRB (MEA) |
| v. | ) REPORT AND RECOMMENDATION |
| Arizona Attorney General, Charles L. Ryan, Sheryl Watkins, | ) |
| Respondents. | ) |

TO THE HONORABLE SUSAN R. BOLTON:

Petitioner, proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on or about April 24, 2012. Petitioner's Prisoner Trust Fund Statement was issued by Transitional Living Communities. See Doc. 3. Petitioner filed an amended petition on May 21, 2012. On May 23, 2013, Petitioner notified the Court that he had changed his address.[1] Respondents filed a Limited Answer to Petition for Writ

_____

[1] It is arguable that the relief sought is moot as it would appear from the record in this matter that the sentence imposed pursuant to the conviction being challenged has been completely served. On February 6, 2008, Petitioner was sentenced to a term of five years imprisonment and given credit for 215 days of pre-conviction incarceration. Petitioner was released from prison in October of 2011 and a "flat time" interpretation of his sentence would result in expiration of the sentence in July of 2012. The habeas petition filed on April 24, 2012, records Plaintiff's address as in the custody of the Arizona Department of Corrections, until May 23,

of Habeas Corpus ("Answer") (Doc. 22) on November 2, 2012. Petitioner filed a reply (Doc. 34) to the answer to his petition on April 2, 2013.

## I Procedural History

A grand jury indictment returned July 16, 2007, charged Petitioner with one count of aggravated assault.  See Answer, Exh. A & Exh. B; Exh. K at 163–64; Exh. M at 9–10.  Prior to Petitioner's trial the state alleged Petitioner had historical prior felony convictions for possession of dangerous drugs, first-degree criminal trespass, and aggravated DUI.  Id., Exh. C.  The state further alleged aggravating circumstances other than the existence of prior convictions.  Id., Exh. D.

On October 3, 2007, the state trial court held a settlement conference regarding the pending aggravated assault charge.  The judge noted Petitioner's commission of the alleged aggravated assault while on probation for a misdemeanor offense.

_____

2012, at which time Petitioner notified the Court of a change of address.

> In Carafas, the Supreme Court listed a number of typical consequences that were enough to save a case from mootness, which included the ability to engage in certain businesses, to vote in elections, or to serve as a juror. A judgment of civil contempt does not threaten any of these interests. Although we have rejected the argument that collateral consequences should not be found when they are of the petitioner's own making-in particular, the possibility of enhancement of a future criminal sentence, when the petitioner is presumably able to avoid the consequences by refraining from committing further crimes-that rule is less helpful when the underlying conviction itself is wholly avoidable, as is the case with civil contempt.

Puchner v. Kruziki, 111 F.3d 541, 543–44 (7th Cir. 1997).

<u>Id.</u>, Exh. F & Exh. G.   The court explained to Petitioner he faced a possible sentence of fifteen years imprisonment if he were convicted of aggravated assault, considering his prior felony convictions.   <u>Id.</u>, Exh. F at 1-6.   The court also explained a proposed plea offer wherein the state agreed to a stipulated sentence of five years imprisonment.   Petitioner did not accept the plea offer at that time.   <u>Id.</u>, Exh. F.

Petitioner's two-day jury trial began on December 21, 2007.   <u>Id.</u>, Exhs. K-L.   At trial the state alleged Petitioner inflicted physical injury on the victim by using a "wooden board with nails" to strike and jab him.   Evidence was presented that the victim's injuries were minimal and did not require medical attention and that the police did not preserve the wooden board as evidence.   The court allowed the state to present the fact of Petitioner's prior felony convictions to the jury because Petitioner testified in his own defense, but ordered the nature of the convictions to be sanitized for the jury.   <u>Id.</u>, Exh. K. at 8; Exh. L at 1-2.

At the conclusion of the state's case Petitioner's counsel moved for a directed verdict, arguing there was insufficient evidence Petitioner assaulted the victim or that the wooden board was a dangerous weapon.   <u>Id.</u>, Exh. X.   The motion was denied but, at the close of evidence, the judge gave the jury an instruction regarding self-defense and a "Willits"[2]

---

[2] <u>See</u> <u>Arizona v. Willits</u>, 96 Ariz. 184, 393 P.2d 274 (1964) (involving the proper instruction to the jury when the defendant contends that the prosecution has lost or destroyed exculpatory evidence, allowing the jury to presume the evidence was exculpatory).

instruction.  The jury found Petitioner guilty as charged.  <u>Id.</u>,
Exh. P at 127; Exh. R; Exh. S at 4.

On February 6, 2008, the trial court declined to follow
the recommendations of the probation officer and the prosecutor
that Petitioner receive the presumptive sentence.  The state
trial court sentenced Petitioner to a mitigated term of five
years imprisonment, i.e., the same term provided in the rejected
plea agreement.  Petitioner received credit for 215 days of pre-
conviction incarceration.  <u>Id.</u>, Exh. U at 14-15; Exh. V at 2.

Petitioner took a timely direct appeal of his
conviction and sentence.  Petitioner's appointed appellate
counsel informed the state court that she could find no arguable
basis for an appeal and asked the court to review the record for
fundamental error.  Petitioner filed pro se pleadings in the
Arizona Court of Appeals.  <u>Id.</u>, Exh. Y.[3]  In a memorandum
decision filed April 16, 2009, the Arizona Court of Appeals
affirmed Petitioner's conviction and sentence.  <u>Id.</u>, Exh. Z.
Petitioner sought review of the appellate court's decision,
which was summarily denied by the Arizona Supreme Court on
September 3, 2009.  <u>Id.</u>, Exhs. AA-DD.

On September 22, 2009, Petitioner initiated an action
for post-conviction relief pursuant to Rule 32, Arizona Rules of
Criminal Procedure.  <u>Id.</u>, Exh. EE.  Petitioner filed two

---

[3] In his direct appeal Petitioner asserted: a violation of
<u>Brady v. Maryland</u>; an improper jury instruction; that a witness (the
victim's wife) committed perjury; that the police destroyed evidence,
i.e., the board used to strike the victim; that the victim sustained
no physical injury and, accordingly, there was no assault; and that
the board with nails was not a dangerous instrument.

pleadings arguing his claims for relief.  Id., Exhs. GG-HH. After docketing these pleadings, on July 14, 2010, Petitioner was transferred from the custody of the Arizona Department of Corrections to a prison in Oklahoma.  On July 27, 2010, the trial court denied post-conviction relief.  Id., Exh. LL.

On August 12, 2010, Petitioner filed an Inmate Letter with the Arizona Department of Corrections.  In the letter Petitioner stated that a box of his legal work became lost during his transport from one unit of the Florence prison to a different unit of that prison, then to Tucson, and then to Oklahoma.  Petitioner asked that his missing legal materials be located or replaced as soon as possible.  Id., Exh. MM.

On August 31, 2010, the Arizona state trial court granted Petitioner's motion for an extension of time in his Rule 32 action and set a new deadline for filing a petition.  Id., Exh. NN.

On September 17, 2010, Petitioner filed another motion for an extension of time in the trial court, stating that he could not continue with the litigation until his records were replaced.  Id., Exh. OO.  On October 11, 2010, the trial court denied Petitioner's simultaneously-filed Request for Preparation of Record, stating "[b]efore the defendant is entitled to consideration of whether to provide any documents or transcripts for a Rule 32 petition, the defendant must file a Notice of Post-Conviction Relief".  The trial court reasoned that "[t]he defendant is not entitled to copies of transcripts at the court's expense to make him aware in the first instance of

events which might constitute grounds for collateral attack under Rule 32." Id., Exh. QQ.

On December 10, 2010, Petitioner filed a petition for review in the Arizona Court of Appeals, asking for review of the trial court's denial of post-conviction relief. Id., Exh. RR. On December 27, 2010, the Arizona Court of Appeals dismissed the petition for review as untimely, and noted that the decision regarding whether to excuse the untimeliness is made by the trial court. Id., Exh. SS.

On June 27, 2011, Petitioner initiated what was construed as a federal habeas proceeding by filing a motion for an extension of the statute of limitations with regard to a section 2254 petition in the United States District Court; the action was docketed as CV 11-1272 PHX SRB (MEA). On June 30, 2011, the Court concluded it did not have jurisdiction to entertain the motion in the absence of a contemporaneously filed petition for habeas relief and dismissed the matter.

On October 4, 2011, Petitioner was released from prison. See Doc. 8.

On March 26, 2012, Petitioner filed a motion in the state trial court styled as seeking to quash an order of restitution imposed as part of his sentence. In denying the motion on April 16, 2012, the state court found nothing in the record indicating an order of restitution had been imposed. Id., Exhs. YY-ZZ.

On April 24, 2012, Petitioner initiated the pending federal habeas action. On May 4, 2012, the Court dismissed the

-6-

petition for Petitioner's failure to name his community supervision officer as a respondent, but allowed Petitioner thirty days to amend the petition.  On May 21, 2012, Petitioner filed an amended habeas petition.

Petitioner asserts he is entitled to habeas relief because:

1. He was denied his right to due process and a fair trial because the state lost or suppressed exculpatory evidence.

2. He was denied his right to due process and a fair trial because the state's loss of evidence was not cured by the "Willits" instruction.

3. He was denied his right to due process and a fair trial because the prosecutor suppressed evidence and used perjured testimony to obtain a conviction.

4. He was denied his right to due process and a fair trial because he was convicted and he is actually innocent, and because state and federal rules of criminal procedure were violated by the trial court.

5. He was denied his right to due process and a fair trial because state and federal rules of criminal procedure were violated by the trial court when it gave an improper jury instruction.

6. He was denied his right to due process and a fair trial because the trial court did not declare a mistrial when the prosecutor used a police report to refresh a witness' recollection, which report, Petitioner contends, was not disclosed.

7. He was denied his right to due process and a fair trial because the prosecutor introduced evidence to the jury which had been "suppressed."

Respondents contend the petition was not filed within the statute of limitations and that Petitioner's claims can be denied on the merits.

**II Statute of limitations**

The petition seeking a writ of habeas corpus is barred by the applicable statute of limitations found in the Antiterrorism and Effective Death Penalty Act ("AEDPA"). The AEDPA imposed a one-year statute of limitations on state prisoners seeking federal habeas relief from their state convictions. See, e.g., Espinoza Matthews v. California, 432 F.3d 1021, 1025 (9th Cir. 2005); Lott v. Mueller, 304 F.3d 918, 920 (9th Cir. 2002). The one-year statute of limitations on habeas petitions generally begins to run on "the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

Petitioner's conviction became final on or about December 3, 2009, when the time expired for seeking certiorari from the Arizona Supreme Court's decision denying relief in Petitioner's direct appeal on September 3, 2009. At that time, Petitioner had initiated a state action for post-conviction relief, which tolled the statute of limitations with regard to Petitioner's federal habeas action.

Using a very generous application of the law to the facts, the statute of limitations was tolled until October 27, 2010, when the Arizona Court of Appeals denied Petitioner's petition for review of the trial court's denial of Rule 32 relief, finding the petition for review was not timely filed. Petitioner had thirty days to seek review of the Court of Appeals' decision by the Arizona Supreme Court, further tolling the beginning of the statute of limitations until November 27, 2010. Using this scenario, the statute of limitations on Petitioner's federal habeas action began to run on November 28, 2010, and expired on November 28, 2011. Accordingly, the petition filed April 24, 2012, was filed approximately five months after the statute of limitations expired.

The one-year statute of limitations for filing a habeas petition may be equitably tolled if extraordinary circumstances beyond a prisoner's control prevent the prisoner from filing on time. See Holland v. Florida, 130 S. Ct. 2549, 2554, 2562 (2010); Bills v. Clark, 628 F.3d 1092, 1096-97 (9th Cir. 2010). A petitioner seeking equitable tolling must establish two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S. Ct. 1807, 1814-15 (2005). See also Ford v. Gonzalez, 683 F.3d 1230, 1237 (9th Cir.), cert. denied, 133 S. Ct. 769 (2012); Porter v. Ollison, 620 F.3d 952, 959 (9th Cir. 2010); Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1011-14 (9th Cir. 2009). In Holland the Supreme Court eschewed a "mechanical rule" for determining extraordinary

-9-

circumstances, while endorsing a flexible, "case-by-case" approach, drawing "upon decisions made in other similar cases for guidance." Bills, 628 F.3d at 1096-97.

The Ninth Circuit Court of Appeals has determined equitable tolling of the filing deadline for a federal habeas petition is available only if extraordinary circumstances beyond the petitioner's control make it impossible to file a petition on time. See Chaffer v. Prosper, 592 F.3d 1046, 1048-49 (9th Cir. 2010); Porter, 620 F.3d at 959; Waldron-Ramsey, 556 F.3d at 1011-14 & n.4; Harris v. Carter, 515 F.3d 1051, 1054-55 & n.4 (9th Cir. 2008). Equitable tolling is only appropriate when external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely habeas action. See Chaffer, 592 F.3d at 1048-49; Waldron-Ramsey, 556 F.3d at 1011; Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999). Equitable tolling is also available if the petitioner establishes their actual innocence of the crimes of conviction. See Lee v. Lampert, 653 F.3d 929, 933-34 (9th Cir. 2011).

Equitable tolling is to be rarely granted. See, e.g., Waldron-Ramsey, 556 F.3d at 1011; Jones v. Hulick, 449 F.3d 784, 789 (7th Cir. 2006); Stead v. Head, 219 F.2d 1298, 1300 (11th Cir. 2000). Equitable tolling is inappropriate in most cases and "the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule." Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002). Petitioner must show that "the extraordinary circumstances were the cause of his untimeliness and that the extraordinary

circumstances made it impossible to file a petition on time."
Porter, 620 F.3d at 959.  It is Petitioner's burden to establish
that equitable tolling is warranted in his case.  See, e.g.,
Porter, 620 F.3d at 959; Espinoza Matthews v. California, 432
F.3d 1021, 1026 (9th Cir. 2004); Gaston, 417 F.3d at 1034.

        In reply to the response to his petition, Petitioner
contends his legal materials were not in his possession after
his transfer to a prison in Oklahoma until his release from
prison on October 4, 2011.  Petitioner argues that, therefore,
the statute of limitations regarding his federal habeas petition
should not begin to run until October 4, 2011.

        Petitioner did diligently pursue post-conviction
remedies, including filing a motion for an extension of the
statute of limitations with regard to a section 2254 petition in
the United States District Court on June 24, 2011.
Additionally, although the pleadings in this matter indicate
that Petitioner was released from prison on October 4, 2011,
when this matter was initiated in April of 2012 Plaintiff was
again or still in the custody of the Arizona Department of
Corrections.

        It is arguable whether Petitioner has stated an
adequate basis for equitable tolling of the statute of
limitations.  Compare Holland, 130 S. Ct. at 2564; Porter, 620
F.3d at 961 (noting the circumstances of cases determined before
and after Holland).  Allowing that the Court may find the
petition is timely based on the doctrine of equitable tolling,
i.e., that Petitioner dutifully pursued his remedies and that

-11-

his failure to timely file a federal habeas petition was due to the unavailability of his legal documents, the Magistrate Judge will discuss Petitioner's claims for habeas relief.

### III Exhaustion and procedural default

The District Court may only grant federal habeas relief on the merits of a claim which has been exhausted in the state courts. See O'Sullivan v. Boerckel, 526 U.S. 838, 842, 119 S. Ct. 1728, 1731 (1999); Coleman v. Thompson, 501 U.S. 722, 729-30, 111 S. Ct. 2546, 2554-55 (1991). To properly exhaust a federal habeas claim, the petitioner must afford the state the opportunity to rule upon the merits of the claim by "fairly presenting" the claim to the state's "highest" court in a procedurally correct manner. See, e.g., Castille v. Peoples, 489 U.S. 346, 351, 109 S. Ct. 1056, 1060 (1989); Rose v. Palmateer, 395 F.3d 1108, 1110 (9th Cir. 2005).[4] The Ninth Circuit Court of Appeals has concluded that, in non-capital cases arising in Arizona, the "highest court" test of the exhaustion requirement is satisfied if the habeas petitioner presented his claim to the Arizona Court of Appeals, either on direct appeal or in a petition for post-conviction relief. See Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999). See also Crowell v. Knowles, 483 F. Supp. 2d 925, 932 (D. Ariz. 2007).

---

[4] Prior to 1996, the federal courts were required to dismiss a habeas petition which included unexhausted claims for federal habeas relief. However, section 2254 now states: "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2) (1994 & Supp. 2011).

To satisfy the "fair presentment" prong of the exhaustion requirement, the petitioner must present "both the operative facts and the legal principles that control each claim to the state judiciary." Wilson v. Briley, 243 F.3d 325, 327 (7th Cir. 2001). See also Kelly v. Small, 315 F.3d 1063, 1066 (9th Cir. 2003). In Baldwin v. Reese, the Supreme Court reiterated that the purpose of exhaustion is to give the states the opportunity to pass upon and correct alleged constitutional errors. See 541 U.S. 27, 29, 124 S. Ct. 1347, 1349 (2004). Therefore, if the petitioner did not present the federal habeas claim to the state court as asserting the violation of a specific federal constitutional right, as opposed to violation of a state law or a state procedural rule, the federal habeas claim was not "fairly presented" to the state court. See, e.g., id., 541 U.S. at 33, 124 S. Ct. at 1351.

> For purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief. The federal claim is fairly presented if raised in the petition itself, an accompanying brief, or another similar document filed with that court.

Gentry v. Sinclair, 705 F.3d 884, 897 (9th Cir. 2013)(internal citations and quotations omitted).

A federal habeas petitioner has not exhausted a federal habeas claim if he still has the right to raise the claim "by any available procedure" in the state courts. 28 U.S.C. § 2254(c). Because the exhaustion requirement refers only to remedies still available to the petitioner at the time they file

-13-

their action for federal habeas relief, it is satisfied if the petitioner is procedurally barred from pursuing their claim in the state courts.  See, e.g., Woodford v. Ngo, 548 U.S. 81, 92-93, 126 S. Ct. 2378, 2387 (2006).  If it is clear the habeas petitioner's claim is procedurally barred pursuant to state law, the claim is exhausted by virtue of the petitioner's "procedural default" of the claim.  See, e.g., id., 548 U.S. at 92, 126 S. Ct. at 2387.

Procedural default occurs when a petitioner has never presented a federal habeas claim in state court and is now barred from doing so by the state's procedural rules, including rules regarding waiver and the preclusion of claims.  See Castille, 489 U.S. at 351-52, 109 S. Ct. at 1060.  Procedural default also occurs when a petitioner did present a claim to the state courts, but the state courts did not address the merits of the claim because the petitioner failed to follow a state procedural rule.  See, e.g., Ylst v. Nunnemaker, 501 U.S. 797, 802, 111 S. Ct. 2590, 2594-95 (1991); Coleman, 501 U.S. at 727-28, 111 S. Ct. at 2553-57; Szabo v. Walls, 313 F.3d 392, 395 (7th Cir. 2002).  "If a prisoner has defaulted a state claim by 'violating a state procedural rule which would constitute adequate and independent grounds to bar direct review ... he may not raise the claim in federal habeas, absent a showing of cause and prejudice or actual innocence.'"  Ellis v. Armenakis, 222 F.3d 627, 632 (9th Cir. 2000), quoting Wells v. Maass, 28 F.3d 1005, 1008 (9th Cir. 1994).

-14-

> The doctrine of procedural default provides that a federal habeas court may not review constitutional claims when a state court has declined to consider their merits on the basis of an adequate and independent state procedural rule. A state procedural rule is adequate if it is regularly or consistently applied by the state courts and it is independent if it does not depend on a federal constitutional ruling. Where a state procedural rule is both adequate and independent, it will bar consideration of the merits of claims on habeas review unless the petitioner demonstrates cause for the default and prejudice resulting therefrom or that a failure to consider the claims will result in a fundamental miscarriage of justice.

McNeill v. Polk, 476 F.3d 206, 211 (4th Cir. 2007) (internal citations and quotations omitted).

> We recognize two types of procedural bars: express and implied. An express procedural bar occurs when the petitioner has presented his claim to the state courts and the state courts have relied on a state procedural rule to deny or dismiss the claim. An implied procedural bar, on the other hand, occurs when the petitioner has failed to fairly present his claims to the highest state court and would now be barred by a state procedural rule from doing so.

Robinson v. Schriro, 595 F.3d 1086, 1100 (9th Cir. 2010).

Because the Arizona Rules of Criminal Procedure regarding timeliness, waiver, and the preclusion of claims bar Petitioner from now returning to the state courts to exhaust any unexhausted federal habeas claims, Petitioner has exhausted, but procedurally defaulted, any claim not previously fairly presented to the Arizona Court of Appeals in his direct appeal. See Insyxiengmay v. Morgan, 403 F.3d 657, 665 (9th Cir. 2005); Beaty v. Stewart, 303 F.3d 975, 987 (9th Cir. 2002). See also Hurles v. Ryan, 706 F.3d 1021, 1032 (9th Cir. 2013) ("Arizona's

-15-

waiver rules are independent and adequate bases for denying relief."); <u>Jones v. Ryan</u>, 691 F.3d 1093, 1101 (9th Cir. 2012); <u>Stewart v. Smith</u>, 536 U.S. 856, 860, 122 S. Ct. 2578, 2581 (2002) (holding Arizona's state rules regarding the waiver and procedural default of claims raised in attacks on criminal convictions are adequate and independent state grounds for affirming a conviction and denying federal habeas relief on the grounds of a procedural bar).

> "Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism." <u>Martinez v. Ryan</u>, --- U.S. ----, 132 S.Ct. 1309, 1316[](2012). One such rule is the doctrine of procedural default, according to which a federal court is barred from hearing the claims of a state prisoner in a habeas corpus proceeding when the decision of the last state court to which the prisoner presented his federal claims rested on an "independent and adequate state ground." <u>Coleman v. Thompson</u>, 501 U.S. 722, 730, 111 S.Ct. 2546, [](1991). However, federal courts are to "presume that there is no independent and adequate state ground for a state court decision when the decision 'fairly appears to rest primarily on federal law, or to be interwoven with federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'" <u>Id.</u> at 735, 111 S.Ct. 2546 (quoting <u>Michigan v. Long</u>, 463 U.S. 1032, 1040–41, 103 S.Ct. 3469, [](1983)). A state court may overcome the above presumption simply by stating "clearly and expressly that its decision is based on bona fide separate, adequate, and independent grounds." <u>Id.</u> at 733, 111 S.Ct. 2546 (quoting <u>Long</u>, 463 U.S. at 1041, 103 S.Ct. 3469) (internal quotation marks and alterations omitted).
> A state court judgment rests on an independent and adequate state procedural

-16-

ground when the "state court decline[s] to address a prisoner's federal claims because the prisoner ... failed to meet a state procedural requirement." Id. at 730, 111 S.Ct. 2546 (emphasis added).

"For a state procedural rule to be 'independent,' the state law ground for decision must not be 'interwoven with the federal law.'" Park v. California, 202 F.3d 1146, 1152 (9th Cir. 2000) (quoting Long, 463 U.S. at 1040–41, 103 S.Ct. 3469, and citing Harris v. Reed, 489 U.S. 255, 265, 109 S.Ct. 1038,[](1989) (applying Long to federal habeas cases)). "A state law ground is so interwoven if 'the state has made application of the procedural bar depend on an antecedent ruling on federal law [such as] the determination of whether federal constitutional error has been committed.'" Id. (quoting Ake v. Oklahoma, 470 U.S. 68, 75, 105 S.Ct. 1087, [](1985)) (alteration in original). See also Stewart v. Smith, 536 U.S. 856, 860, 122 S.Ct. 2578, [](2002) (per curiam) (noting that, although the rule at issue there "does not require a federal constitutional ruling on the merits, if the state court's decision rested primarily on a ruling on the merits nevertheless, its decision would not be independent of federal law"). A review of pertinent Supreme Court caselaw illustrates that a state court ruling, even on a state procedural issue, that necessarily or actually depends on an antecedent ruling on the merits of a federal claim is interwoven with federal law and therefore not independent.

Nitschke v. Belleque, 680 F.3d 1105, 1109-10 (9th Cir.), cert. denied, 133 S. Ct. 450 (2012).

The Court may consider the merits of a procedurally defaulted claim if the petitioner establishes cause for their procedural default and prejudice arising from that default. "Cause" is a legitimate excuse for the petitioner's procedural default of the claim and "prejudice" is actual harm resulting from the alleged constitutional violation. See Thomas v. Lewis,

945 F.2d 1119, 1123 (9th Cir. 1991).   Under the "cause" prong
of this test, Petitioner bears the burden of establishing that
some objective factor external to the defense impeded his
compliance with Arizona's procedural rules.   See Moorman v.
Schriro, 426 F.3d 1044, 1058 (9th Cir. 2005); Vickers v.
Stewart, 144 F.3d 613, 617 (9th Cir. 1998); Martinez-Villareal
v. Lewis, 80 F.3d 1301, 1305 (9th Cir. 1996).

        A petitioner's lack of legal expertise is not cause to
excuse procedural default.   See, e.g., Hughes v. Idaho State Bd.
of Corr., 800 F.2d 905, 908 (9th Cir. 1986).   Alleged
ineffective assistance of appellate counsel does not establish
cause for the failure to properly exhaust a habeas claim in the
state courts unless the specific Sixth Amendment claim providing
the basis for cause was itself properly exhausted.   See Edwards
v. Carpenter, 529 U.S. 446, 451, 120 S. Ct. 1587, 1591 (2000);
Coleman, 501 U.S. at 755, 111 S. Ct. at 2567; Deitz v. Money,
391 F.3d 804, 809 (6th Cir. 2004).   "Attorney ignorance or
inadvertence is not cause, but attorney error rising to the
level of an independent constitutional violation (in the form of
ineffective assistance of counsel) does constitute cause."
Dickens v. Ryan, 688 F.3d 1054, 1070-71 (9th Cir. 2012).

        To establish prejudice, the petitioner must show that
the alleged constitutional error worked to his actual and
substantial disadvantage, infecting his entire criminal
proceedings with constitutional violations.   See Vickers, 144
F.3d at 617; Correll v. Stewart, 137 F.3d 1404, 1415-16 (9th
Cir. 1998).   Establishing prejudice requires a petitioner to

-18-

prove that, "but for" the alleged constitutional violations, there is a reasonable probability he would not have been convicted of the same crimes.  See Manning v. Foster, 224 F.3d 1129, 1135-36 (9th Cir. 2000); Ivy v. Caspari, 173 F.3d 1136, 1141 (8th Cir. 1999).  Although both cause and prejudice must be shown to excuse a procedural default, the Court need not examine the existence of prejudice if the petitioner fails to establish cause.  See Engle v. Isaac, 456 U.S. 107, 134 n.43, 102 S. Ct. 1558, 1575 n.43 (1982); Thomas, 945 F.2d at 1123 n.10.

Review of the merits of a procedurally defaulted habeas claim is required if the petitioner demonstrates review of the merits of the claim is necessary to prevent a fundamental miscarriage of justice.  See Dretke v. Haley, 541 U.S. 386, 393, 124 S. Ct. 1847, 1852 (2004); Schlup v. Delo, 513 U.S. 298, 316, 115 S. Ct. 851, 861 (1995); Murray v. Carrier, 477 U.S. 478, 485-86, 106 S. Ct. 2639, 2649 (1986).  A fundamental miscarriage of justice occurs only when a constitutional violation has probably resulted in the conviction of one who is factually innocent.  See Murray, 477 U.S. at 485-86, 106 S. Ct. at 2649; Thomas v. Goldsmith, 979 F.2d 746, 749 (9th Cir. 1992) (showing of factual innocence is necessary to trigger manifest injustice relief).  To satisfy the "fundamental miscarriage of justice" standard, a petitioner must establish by clear and convincing evidence that no reasonable fact-finder could have found him guilty of the offenses charged.  See Dretke, 541 U.S. at 393, 124 S. Ct. at 1852; Wildman v. Johnson, 261 F.3d 832, 842-43 (9th Cir. 2001).

1

### IV Standard of review regarding exhausted claims

2       The Court may not grant a writ of habeas corpus to a
3   state prisoner on a claim adjudicated on the merits in state
4   court proceedings unless the state court reached a decision
5   contrary to clearly established federal law, or the state court
6   decision was an unreasonable application of clearly established
7   federal law.   See 28 U.S.C. § 2254(d); Carey v. Musladin, 549
8   U.S. 70, 75, 127 S. Ct. 649, 653 (2006); Musladin v. Lamarque,
9   555 F.3d 834, 838 (9th Cir. 2009).

10      A state court decision is contrary to federal law if it
11  applied a rule contradicting the governing law of Supreme Court
12  opinions, or if it confronts a set of facts that is materially
13  indistinguishable from a decision of the Supreme Court but
14  reaches a different result.   See, e.g., Brown v. Payton, 544
15  U.S. 133, 141, 125 S. Ct. 1432, 1438 (2005); Yarborough v.
16  Alvarado, 541 U.S. 652, 663, 124 S. Ct. 2140, 2149 (2004);
17  Taylor v. Lewis, 460 F.3d 1093, 1097 n.4 (9th Cir. 2006). A
18  state court decision involves an unreasonable application of
19  clearly established federal law if it correctly identifies a
20  governing rule but applies it to a new set of facts in a way
21  that is objectively unreasonable, or if it extends, or fails to
22  extend, a clearly established legal principle to a new set of
23  facts in a way that is objectively unreasonable.   McNeal v.
24  Adams, 623 F.3d 1283, 1287-88 (9th Cir. 2010), cert. denied,
25  131 S. Ct. 3066 (2011).

26      For example, a state court's decision is considered
27  contrary to federal law if the state court erroneously applied

28                              -20-

the wrong standard of review or an incorrect test to a claim. See Knowles v. Mirzayance, 556 U.S. 111, 129 S. Ct. 1411, 1419 (2009); Wright v. Van Patten, 552 U.S. 120, 124–25, 128 S. Ct. 743, 746–47 (2008); Norris v. Morgan, 622 F.3d 1276, 1288 (9th Cir. 2010), cert. denied, 131 S. Ct. 1557 (2011). See also Frantz v. Hazey, 533 F.3d 724, 737 (9th Cir. 2008); Bledsoe v. Bruce, 569 F.3d 1223, 1233 (10th Cir. 2009).

The state court's determination of a habeas claim may be set aside under the unreasonable application prong if, under clearly established federal law, the state court was "unreasonable in refusing to extend [a] governing legal principle to a context in which the principle should have controlled." Ramdass v. Angelone, 530 U.S. 156, 166, 120 S. Ct. 2113, 2120 (2000). See also Cheney v. Washington, 614 F.3d 987, 994 (9th Cir. 2010); Cook v. Schriro, 538 F.3d 1000, 1015 (9th Cir. 2008). However, the state court's decision is an unreasonable application of clearly established federal law only if it can be considered objectively unreasonable. See, e.g., Renico v. Lett, 559 U.S. 766, 130 S. Ct. 1855, 1862 (2010). An unreasonable application of law is different from an incorrect one. See id.; Cooks v. Newland, 395 F.3d 1077, 1080 (9th Cir. 2005). "That test is an objective one and does not permit a court to grant relief simply because the state court might have incorrectly applied federal law to the facts of a certain case." Adamson v. Cathel, 633 F.3d 248, 255–56 (3d Cir. 2011).

A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could

disagree" on the correctness of the state court's decision. <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S. Ct. 2140,[ ] (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." <u>Ibid.</u> "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 129 S.Ct. 1411, 1413–14, [ ] (2009) (internal quotation marks omitted).

<u>Harrington v. Richter</u>, 131 S. Ct. 770, 786 (2011).

The phrase "clearly established Federal law" refers to "the holdings, as opposed to the dicta," of the Supreme Court's decisions "as of the time of the relevant state-court decision." <u>Williams v. Taylor</u>, 529 U.S. 362, 412, 120 S. Ct. 1495 [ ] (2000). A state court's decision is "contrary to" this body of law if it applies a rule that contradicts the governing law articulated by the Supreme Court or arrives at a result different than that reached by the Supreme Court in a case with materially indistinguishable facts. <u>Id.</u> at 405–06, 529 U.S. 362, 120 S. Ct. 1495, [].

A decision involves an "unreasonable application" of clearly established federal law if it "identifies the correct governing legal principle ... but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> at 413, 529 U.S. 362, 120 S. Ct. 1495 []. The Supreme Court has emphasized that "an unreasonable application of federal law is different from an incorrect application of federal law." <u>Id.</u> at 410, 529 U.S. 362, 120 S. Ct. 1495, []. Accordingly, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." <u>Id.</u> at 411, 529 U.S. 362, 120 S. Ct. 1495.Instead, the court must determine whether the state court's application of Supreme Court precedents was objectively

-22-

> unreasonable. Id. at 409, 529 U.S. 362, 120
> S. Ct. 1495, []. Although the Supreme Court's
> decisions are the focus of the
> unreasonable-application inquiry, we may look
> to Ninth Circuit case law as "persuasive
> authority for purposes of determining whether
> a particular state court decision is an
> 'unreasonable application' of Supreme Court
> law." Duhaime v. Ducharme, 200 F.3d 597, 600
> (9th Cir. 2000).

Howard v. Clark, 608 F.3d 563, 567–68 (9th Cir. 2010).

Accordingly, if the Supreme Court has not addressed a specific issue in its holdings, the state court's adjudication of the issue cannot be an unreasonable application of clearly established federal law. See Stenson v. Lambert, 504 F.3d 873, 881 (9th Cir. 2007), citing Kane v. Garcia Espitia, 546 U.S. 9, 10, 126 S. Ct. 407, 408 (2006). Stated another way, if the issue raised by the petitioner "is an open question in the Supreme Court's jurisprudence," the Court may not issue a writ of habeas corpus on the basis that the state court unreasonably applied clearly established federal law by rejecting the precise claim presented by the petitioner. Cook, 538 F.3d at 1016; Crater v. Galaza, 491 F.3d 1119, 1123 (9th Cir. 2007). The United States Supreme Court "has held on numerous occasions that it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles, 129 S. Ct. at 1419, citing Wright, 552 U.S. at 124-25, 128 S. Ct. at 746-47.

Factual findings of a state court are presumed to be correct and can be reversed by a federal habeas court only when

the federal court is presented with clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1); Miller-El v. Dretke, 545 U.S. 231, 240-41, 125 S. Ct. 2317, 2325 (2005); Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003); Crittenden v. Ayers, 624 F.3d 943, 950 (9th Cir. 2010); Stenson v. Lambert, 504 F.3d 873, 881 (9th Cir. 2007); Anderson v. Terhune, 467 F.3d 1208, 1212 (9th Cir. 2006). The "presumption of correctness is equally applicable when a state appellate court, as opposed to a state trial court, makes the finding of fact." Sumner v. Mata, 455 U.S. 591, 593, 102 S. Ct. 1303, 1304-05 (1982).  Additionally, the United States Supreme Court has held that, with regard to claims adjudicated on the merits in the state courts, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011).

    If the Court determines that the state court's decision was an objectively unreasonable application of clearly established United States Supreme Court precedent, the Court must review whether Petitioner's constitutional rights were violated, i.e., the state's ultimate denial of relief, without the deference to the state court's decision that the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") otherwise requires. See Panetti v. Quarterman, 551 U.S. 930, 953-54, 127 S.Ct. 2842, 2858-59 (2007); Greenway v. Schriro, 653 F.3d 790, 805-06 (9th Cir. 2011).

**V Petitioner's claims for relief**

**1. Petitioner contends he was denied his right to due process and a fair trial because the state lost or suppressed exculpatory evidence.**

Petitioner raised this claim in his direct appeal. The state appellate court reviewed the claim for fundamental error. Petitioner alleged that the state's failure to "disclose" the board Petitioner used to touch the victim (according to Petitioner's own testimony at his trial), a steering-wheel lock that Petitioner asserts the victim used to threaten Petitioner, and a disposable beverage cup, constituted constitutional error.

The appellate court concluded that the prosecutor could not have disclosed evidence which was not preserved by the police and, accordingly, there was no error pursuant to <u>Brady v. Maryland</u>. The appellate court also concluded that Petitioner could not prove he was prejudiced by the absence of the evidence because the trial court gave the jury a Willits instruction, allowing the jury to infer the evidence would be exculpatory.

The Arizona Court of Appeals' decision that Petitioner's rights pursuant to <u>Brady</u> were not violated was not clearly contrary to nor an unreasonable application of federal law. Accordingly, Petitioner is not entitled to habeas relief on this claim.

**2. Petitioner asserts he was denied his right to due process and a fair trial because the state's loss of evidence was not cured by a "Willits" instruction.**

To the extent that Petitioner properly exhausted this claim in the state courts, the Arizona Court of Appeals did not err in determining that the police or prosecution's "failure" to

-25-

"preserve" the board used in the assault did not violate Petitioner's right to due process of law or a fair trial.

Under certain circumstances, the state's failure to collect or preserve potentially exculpatory evidence constitutes a due process violation.  See Arizona v. Youngblood, 488 U.S. 51, 58 (1988); Villafuerte v. Stewart, 111 F.3d 616, 625-26 (9th Cir. 1997); Schad v. Schriro, 454 F. Supp. 2d 897, 914-15 (D. Ariz. 2006).

> The duty to preserve evidence is limited to material evidence, i.e., evidence whose exculpatory value was apparent before its destruction and that is of such nature that the defendant cannot obtain comparable evidence from other sources. California v. Trombetta, 467 U.S. 479, 489, 104 S.Ct. 2528, 2534, [](1984). "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Youngblood, 488 U.S. at 58, 109 S.Ct. at 337.

Grisby v. Blodgett,130 F.3d 365, 371 (9th Cir. 1997).

> Absent a showing of bad faith on the part of the police, "*failure to preserve potentially useful evidence does not constitute a denial of due process of law*." Arizona v. Youngblood, 488 U.S. 51, 58, 109 S.Ct. 333, [] (1988). [The petitioner] makes no *colorable showing*, or indeed any showing at all, that the State destroyed the Ranchero *to prevent disclosure of evidence favorable to the defense*, nor is there any reason to believe that the *exculpatory value of the Ranchero was apparent prior to its destruction*. "The mere failure to preserve evidence which could have been subjected to tests which might have exonerated the defendant does not constitute a due process violation." United States v. Hernandez, 109 F.3d 1450, 1455 (9th Cir. 1997). Phillips has not met the requirements for an evidentiary hearing on this claim.

Phillips v. Woodford, 267 F.3d 966, 987 (9th Cir. 2001).

The Arizona Court of Appeals' decision denying this claim in Petitioner's direct appeal did not violate any clearly established Supreme Court precedent because none of the evidence at issue had exculpatory value that was apparent before it was destroyed and because the Arizona Court of Appeals determined that, as a matter of fact, Petitioner was not prejudiced by the alleged "failure" to preserve the evidence.

**3. Petitioner argues he was denied his right to due process and a fair trial because the prosecutor suppressed evidence and used perjured testimony to obtain a conviction.**

In his third habeas claim Petitioner alleges that the prosecution suppressed a police report and then knowingly used perjured testimony to convict him. Petitioner contends that the trial court erred by granting the prosecutor's motion to preclude the submission of the actual police report into evidence, which Petitioner argues allowed the victim and his wife to testify inconsistently with their alleged statements in that police report.

In his direct appeal Petitioner asserted that the victim's wife gave perjured testimony. The Arizona Court of Appeals found that the witness had been disclosed to the defense and that the defense was aware of the likely content of her testimony. The appellate court also determined that the issue of this witness' credibility was for jury to decide. The state appellate court also noted that, although Petitioner alleged this witness had given contradictory statements to police and on the witness stand as the basis for his assertion that her

-27-

testimony was perjured, the appellate court found no support for in the record.

To the extent Petitioner exhausted this claim in the state courts, the Arizona Court of Appeals did not err in determining that Petitioner's right to due process of law was not violated by the evidentiary ruling or by the testimony of the victim's wife.

**4. Petitioner asserts he was denied his right to due process and a fair trial because he was convicted and he is actually innocent.**

Petitioner argues that he is innocent of aggravated assault because there was insufficient evidence the victim sustained serious physical injury, as Petitioner contends the term "physical injury" is defined by Arizona law.

Petitioner raised this claim in his direct appeal. The Arizona Court of Appeals denied the claim on the merits, concluding the victim's injuries satisfied the requirements of Arizona law because although minimal, they were the result of wrongful acts committed by physical force.

Petitioner has not established that he is entitled to habeas relief on the merits of this claim. Federal habeas relief does not lie for alleged errors of state law. See 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67–68 (1991).

**5. He was denied his right to due process and a fair trial because state and federal rules of criminal procedure were violated by the trial court when it gave an improper jury instruction.**

In his fifth habeas claim, Petitioner asserts that an improper jury instruction expanded the elements of the offense

-28-

and eased the state's burden of proof.   Petitioner argues that the prosecution "created an additional element of the aggravated assault statute" in that the final jury instructions included the following element of the crime: "the use or threatening exhibition of a wooden board with nails."

Petitioner did not raise this claim in his direct appeal.   The claims raised in Petitioner's Rule 32 action were not addressed by the Arizona Court of Appeals, which found the claims contained in the Rule 32 action precluded by Petitioner's failure to timely present the claims to the appellate court. Accordingly, Petitioner procedurally defaulted his fifth claim for relief.   Petitioner has not shown cause for, nor prejudice arising from his procedural default of the claim, nor has Petitioner established that manifest injustice will occur absent consideration of the merits of this claim.   Accordingly, the Court should not consider the merits of the claim.

**6.   Petitioner maintains he was denied his right to due process and a fair trial because the trial court did not declare a mistrial when the prosecutor used a police report to refresh a witness' recollection, which report, Petitioner contends, was not disclosed to the defense.**

Petitioner argues that the police officers' testimony should have been stricken, or a mistrial declared, because the trial court granted the prosecution's motion to "suppress" the police report, but then allowed the prosecution to offered the report to the testifying police officers to refresh their recollection.

This claim was not presented to the state courts in a procedurally correct manner.   Petitioner has not established

-29-

cause for, nor prejudice arising from his procedural default of this claim.  Accordingly, the Court may not grant relief on the merits of the claim and should not consider the merits of the claim.

**7. Petitioner was denied his right to due process and a fair trial because the prosecutor introduced evidence to the jury which had been "suppressed."**

In his seventh habeas claim, Petitioner argues that the prosecutor introduced suppressed evidence, i.e., a police report, to the jury.

This claim was not presented to the state courts in a procedurally correct manner.  Petitioner has not established cause for, nor prejudice arising from his procedural default of this claim.  Accordingly, the Court may not grant relief on the merits of the claim and should not consider the merits of the claim.

**VI Conclusion**

Petitioner did not file his habeas petition within one year of the date his state conviction became final.  Although Petitioner diligently pursued relief, it s arguable whether Petitioner has established that he is entitled to equitable tolling of the statute of limitations.  Some of Petitioner's claims were exhausted in the state courts; these claims were not improperly decided by the Arizona Court of Appeals.  Petitioner's other claims for relief were not properly exhausted in the state courts and Petitioner has not established cause for, nor prejudice arising from his default of these claims.

**IT IS THEREFORE RECOMMENDED that** Mr. Korba's Petition for Writ of Habeas Corpus be **denied and dismissed with prejudice**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

Pursuant to Rule 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed seventeen (17) pages in length.

Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo appellate consideration of the issues. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will constitute a waiver of a party's right to appellate review of the findings of fact and conclusions of law

in an order or judgment entered pursuant to the recommendation of the Magistrate Judge.

Pursuant to 28 U.S.C. foll. § 2254, R. 11, the District Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." The undersigned recommends that, should the Report and Recommendation be adopted and, should Petitioner seek a certificate of appealability, a certificate of appealability should be denied because Petitioner has not made a substantial showing of the denial of a constitutional right as required by 28 U.S.C.A § 2253(c)(2).

DATED this 22nd day of April, 2013.

_____
Mark E. Aspey
United States Magistrate Judge